UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| RUTH ANNE CAMPBELL, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:18-CV-435 JD |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

**OPINION AND ORDER**

Plaintiff Ruth Anne Campbell appeals the denial of her claim for disability insurance benefits. For the following reasons, the Court remands this matter to the Commissioner for further proceedings.

**BACKGROUND**

Ms. Campbell filed her initial application for benefits on October 9, 2014, alleging disability beginning that same date. Ms. Campbell's application was denied initially, on reconsideration, and following an administrative hearing in April 2017 at which she was represented by counsel. At that hearing, the ALJ heard testimony from Ms. Campbell and vocational expert Thomas Gusloff. The ALJ found that Ms. Campbell had several severe impairments but that she was not disabled since October 9, 2014. *See* 20 C.F.R. § 404.1520. The Appeals Council denied review of the ALJ's decision, making it the final determination of the Commissioner.

1

## STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

# DISCUSSION

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4). These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

20 C.F.R. § 404.1520(a)(4); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at

step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Campbell now attacks the ALJ's decision on two main grounds. First, she argues that the ALJ inadequately weighed the opinions of her treating providers. And second, Ms. Campbell maintains that the ALJ improperly discounted her subjective symptomatic complaints. Although the first of Ms. Campbell's arguments does not persuade the Court, the ALJ nonetheless based her assessment of Ms. Campbell's symptoms on an incomplete accounting of her ability to perform activities of daily living ("ADLs"). This requires remand.

**A.      Subjective Complaints**

In crafting Ms. Campbell's RFC, the ALJ found that Ms. Campbell's "statements concerning the intensity, persistence and limiting effects" of her alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. 15). "So long as an ALJ gives specific reasons supported by the record," the Court will not overturn his credibility determination unless it is "patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). The ALJ's decision must, however, provide specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and must be sufficiently specific or clearly articulated so the individual and any subsequent reviewers can assess how the adjudicator evaluated the symptoms. SSR 16-3p; *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[A]n ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record."). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009).

The ALJ based her decision to discredit Ms. Campbell's symptomatic complaints, in significant part, on Ms. Campbell's perceived ability to perform various ADLs without issue.[1] Addressing Ms. Campbell's physical symptoms, the ALJ noted that Ms. Campbell "has often reported staying busy cleaning rental properties and running her daughter and son-in-law to their appointments." (R. 16). The ALJ also noted that Ms. Campbell reported that she could mow her own lawn. *Id.* Elsewhere in her opinion, the ALJ considered that Ms. Campbell "can go out alone and shop in stores" and that she "spends time with others" in contrast to Ms. Campbell's claim that she does not like being around other people and only leaves the house when absolutely necessary. (R. 13). The ALJ also noted that Ms. Campbell "is able to drive a car" in response to Ms. Campbell's alleged limitations in concentration. *Id.*[2]

While a claimant's ADLs are an appropriate factor for an ALJ to consider, the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities … does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Indeed, a claimant's "ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern work-place." *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). When an ALJ considers a claimant's activities, she should consider not only what the claimant does, but also how the claimant goes about performing those activities

---

[1] Ms. Campbell also broadly criticizes the ALJ for discrediting her symptomatic complaints of pain. This argument does not contain much substance, but the Court need not address its merits given the outcome here. Ms. Campbell is, of course, free to pursue this argument on remand.

[2] Although the ALJ's discussion of Ms. Campbell's ability to drive, shop, and interact with others occurs during the evaluation of steps two and three, the ALJ incorporated these observations into her RFC analysis: "The following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental functional analysis." (R. 14).

and what effect the activities have on the claimant. *Craft*, 539 F.3d at 680. The ALJ did not do so here.

For example, the ALJ inferred from Ms. Campbell's purportedly unrestricted ability to clean rental properties, bring her daughter to medical appointments, and mow her lawn, that the symptoms caused by Ms. Campbell's severe physical impairments (degenerative disc disease, fibromyalgia, and right rotator cuff tear) are not as limiting as alleged. The ALJ, however, never acknowledged Ms. Campbell's testimony that she needs to take breaks when mowing the lawn—despite using a riding mower—due to the pain it causes to her back and right arm. (R. 67, 70). The ALJ also failed to mention medical records indicating that, in September 2016, Ms. Campbell sought treatment after mowing her lawn for exacerbated pain and limited range of motion in her right shoulder. (R. 729). As for cleaning rental properties, the ALJ made no reference to evidence suggesting Ms. Campbell's physical impairments restrict her ability to perform this task in a timely manner. Indeed, Ms. Campbell reported that cleaning her own house can take anywhere between two-to-three hours and two-to-three *days* because of the many breaks she needs to take due to pain. (R. 236, 269). And as for taking her daughter to medical appointments, the ALJ makes no effort to describe *why* that activity indicates Ms. Campbell is capable of working full time. *See Manella v. Astrue*, 820 F. Supp. 2d 911, 925 (E.D. Wis. 2011) (remanding where ALJ relied on claimant's ability to take her two children to medical appointments to support his finding that she was not functionally limited); *Williams v. Astrue*, No. 1:08-cv-1353, 2010 WL 2673867, at *2 (S.D. Ind. June 29, 2010) ("Because a person can take care of personal needs and care for her children in a home environment does not demonstrate, without more, that she can function in a workplace setting on a sustained basis.").

Furthermore, although the ALJ noted that Ms. Campbell struggles with being around other people and that she only leaves her house when she must, the ALJ countered those allegations against the broad observations that Ms. Campbell "can go out alone and shop in stores" and "spends time with others." (R. 13). But the ALJ's reasoning here overlooks Ms. Campbell's testimony to the contrary, that she *avoids* going out alone and takes her daughter with her when grocery shopping to alleviate her anxiety. (R. 68, 71). And, while Ms. Campbell occasionally "spends time with others," she repeatedly stated that whenever she interacts with other people, she pretends to agree with what they have to say in order to bring about a quick end to the conversation. (R. 235, 240). Finally, the ALJ correctly noted that Ms. Campbell drives and relied on this observation to undermine Ms. Campbell's allegations that she has difficulty with concentration and finishing tasks. (R. 13). But in drawing this conclusion, the ALJ ignored evidence that calls her reasoning directly into question. Specifically, Ms. Campbell reported to her treating psychologist that she has gotten lost while driving, or that she starts to drive somewhere, forgets where she intended to go, and has to turn around. (R. 572). When she gets lost, Ms. Campbell noted that she has to "drive around until I find something I know." *Id.*

The ALJ in this case neglected to consider the many limitations associated with Ms. Campbell's performance of ADLs. In doing so, she improperly "cherry-picked" facts from the medical record to support her conclusions while ignoring evidence from the same record that supports Ms. Campbell's allegations and highlights her diminished ability to engage in these various tasks. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Relatedly, the ALJ failed to articulate whether or how Ms. Campbell's limitations had any

7

bearing on the conclusions the ALJ drew from Ms. Campbell's participation in these activities, leaving the Court unable to trace the ALJ's logic or meaningfully review her determination. *See Herron v. Shalala,* 19 F.3d 329, 333-34 (7th Cir. 1994) (indicating that an ALJ must explain his analysis of the evidence with enough detail and clarity to permit meaningful review). These shortcomings require remand.

**B.     Additional Arguments**

On remand, the Court flags the ALJ's reliance on her observation that Ms. Campbell's depression and anxiety "have been noted to be stable on medications." (R. 16). The ALJ included this note as part of her analysis to discredit Ms. Campbell's symptomatic complaints related to her mental impairments, but several courts have criticized ALJs for equating the term "stable" to a finding that a claimant is not disabled absent further inquiry into that medical designation. *See Hunt v. Astrue*, 889 F. Supp. 2d 1129, 1144 (E.D. Wis. 2012) ("Nor is it appropriate to assume that a person characterized as 'stable' is able to work."); *Neher v. Colvin*, No. 14 C 5430, 2016 WL 278877, *4 (N.D. Ill. Jan. 22, 2016) ("One can be stable and yet disabled, and it is the ALJ's responsibility to recognize the need for further clarification of a claimant's conditions and to fully develop the record before making RFC and disability determinations ….") (citing *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1030 (E.D. Wis. 2004)). On remand, the Court encourages the ALJ to further inquire as to Ms. Campbell's "stable" depression and anxiety before drawing conclusions of disability based on such medical terminology.

Finally, as mentioned at the outset, Ms. Campbell's remaining criticism of the ALJ for assigning too little weight to her treating sources falls short. Specifically, Ms. Campbell accuses the ALJ of "cherry-picking" facts from the medical record to support her conclusion that the various treating providers' opinions are inconsistent with the evidence. While the ALJ may have

8

improperly "cherry-picked" facts during her discussion of Ms. Campbell's ability to perform ADLs, the Court does not agree that the ALJ committed that same error with respect to Ms. Campbell's treating sources. For example, Ms. Campbell alleges that the ALJ erroneously found that the opinions of her therapist, Ms. Cynthia White, were not supported by the record because the ALJ glossed over Ms. Campbell's "years of mental health therapy and psychotropic medication management," her mental diagnoses, and a suicide attempt. [DE 20 at 6] But the ALJ explicitly considered all of these points against Ms. White's opinions. (R. 15-16). Ms. Campbell further claims that the ALJ omitted discussion of evidence that would support an award of benefits with regard to Ms. Campbell's depressed mood, feelings of hopelessness and anxiety, and deficits in memory, focus, and judgment. Ms. Campbell maintains that such an omission led the ALJ to improperly discount the opinions of treating nurse practitioner Michele Loughren and Dr. Michael Frampton, but once again, the ALJ considered *each* of these lines of evidence. *Id.* Recall, "the ALJ need not discuss every piece of evidence in the record" so long as he does not "ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted). The ALJ did not run afoul of this rule when she assigned less weight to Ms. Campbell's treating providers than Ms. Campbell would have hoped. Thus, instead of pointing to evidence that the ALJ neglected to consider, Ms. Campbell's argument here asks the Court to reweigh the evidence already presented to and considered by the ALJ, which the Court cannot do. *Lopez*, 336 F.3d at 539.

## CONCLUSION

For the reasons stated herein, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: June 20, 2019

                                                                /s/ JON E. DEGUILIO
                                                        Judge
                                                        United States District Court